DelBello Donnellan Weingarten
Wise & Wiederkehr, LLP
Charles L. Rosenzweig, Esq. (CR 7622)
Nelida Lara, Esq. (NL1204)
*Attorneys Plaintiff H&H Metals Corp.*
360 Hamilton Avenue
White Plains, New York 10601
Phone: (914) 681-0200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
H&H METALS CORP.,

                       Plaintiff,                Case No. 23-cv-10640

      -against-

ERNESTO BERNADET, AMA RESOURCES, INC.
and ELECTROQUÍMICA DEL NEUQUÉN, S.A.,

                    Defendants.
---------------------------------------------------------------------X

**PROPOSED DEFAULT JUDGMENT AGAINST DEFENDANT ERNESTO BERNADET**

This action having been commenced on December 8, 2023 by the filing of the Summons and Complaint, and a copy of the Summons and Complaint having been served on the defendant Ernesto Bernadet, on September 9, 2024, and a proof of service having been filed on September 9, 2024 and the defendant not having answered the Complaint, and the time for answering the Complaint having expired, and the Clerk having issued a Certificate of Default on June 11, 2025;

WHEREAS, the Complaint makes certain allegations, which are deemed admitted by virtue of defendant's default, and the plaintiff has submitted to the Court the declaration of its President, James Holme, attesting to certain facts and attaching exhibits which show the following:

1

WHEREAS, Plaintiff H&H Metals Corp. ("H&H") is a New York corporation with its principal place of business in New York, New York, and is primarily engaged in the international purchase, sale and trading of metallurgical ores, concentrated alloys and unrefined metal;

WHEREAS, defendant Ernesto Bernadet ("Bernadet") is an individual with last known address at 92 SW 3rd Street, No. 511, Miami, Florida;

WHEREAS, defendant Ernesto Bernadet was, at all times material to this action, the majority owner, President, and Chairman of the Board of AMA Resources, Inc., and had complete authority and control over AMA's business affairs and corporate actions;

WHEREAS, Bernadet is believed to hold at least partial ownership of Electroquímica del Neuquén, S.A. and to serve as its President, as reflected in a Special Power of Attorney (Poder Especial) for Mining Matters executed under Argentine law and annexed to the Complaint as Exhibit D;

WHEREAS, on May 6, 2019, under Contract No. Cu-1166 dated April 25, 2019, H&H advanced AMA Resources, Inc. $435,000 for copper materials (the "First Loan"), and subsequently AMA sought an additional $300,000 from H&H in October 2020 (the "Second Loan");

WHEREAS, these transactions culminated in an installment loan agreement on October 8, 2020, which consolidated the First and Second Loans into a single obligation (the "Loan"), backed by Bernadet individually as guarantor, documented in a promissory note for $807,607.06;

WHEREAS, as further consideration for the Loan, Bernadet entered into a security agreement giving H&H a first priority collateral security interest and lien upon all rights derived from certain mining concessions located in Argentina (the "Security Agreement");

2

WHEREAS, pursuant to Section 19 of the Security Agreement, Bernadet expressly consented to the exclusive jurisdiction of the federal courts located in the Southern District of New York for any claims or disputes arising out of or related to the Security Agreement and Loan Documents, and Bernadet waived any objection based upon lack of personal jurisdiction, improper venue or forum non conveniens, and further waived personal service of the summons, complaint and other process;

WHEREAS, the collateral subject to H&H's security interest includes all rights derived from various mining concessions in Argentina owned by Bernadet, including: Revancha (expediente 070-159-2008), La Cuprosa (expediente 4.281-1967), La Barrosa (expediente 4.854-1969), Gabriela Victoria (expediente 069-159-2008), Fauspe Sur (expediente 1136/1994), La Nuestra (expediente 5742/1969), Quillen Diez B (expediente 8051/1993), and El Deslinde (expediente 453-141-2006) and all Equipment, Fixtures, General Intangibles, and Books and Records relating to the foregoing; and  (i) any and all products and Proceeds of all or any of the foregoing, and (ii) payments due or to become due under leases, rentals and hires of any or all of the foregoing (collectively the "Collateral");

WHEREAS, H&H perfected the security interest in the Collateral by filing appropriate U.C.C. financing statements;

WHEREAS, in the Security Agreement, Bernadet provided extensive warranties that he owned the Collateral free and clear of all liens and that no Collateral was tied to any existing agreements that would impede granting a lien;

WHEREAS, following the signing of the Security Agreement, H&H encountered deliberate obstruction from Bernadet in recording the security interest in Argentina;

WHEREAS, Bernadet initially granted a power of attorney to Ricardo Fantaguzzi to register H&H's interest in mining concessions, but without notifying H&H, purported to revoke the power of attorney on January 26, 2021;

WHEREAS, subsequent investigation revealed that prior to the Security Agreement, the following parts of the Collateral had been transferred to Electroquímica del Neuquén, S.A.: Revancha (expediente 070-159-2008; Quillen Diez, B (expediente 8051/1993),  La Cuprosa (expediente 4.281 – 1967), La Barrosa (expediente 4.854 – 1969), La Nuestra (expediente 5742/1969) (collectively the "Diverted Collateral"), indicating that the representations in the Security Agreement concerning Bernadet's ownership of the Collateral was false and were fraudulently made to induce H&H into making the Loans;

WHEREAS, Bernadet provided outdated certificates of dominion to H&H as proof of ownership, but investigations uncovered the transfer on March 26, 2013, of the Diverted Collateral to Electroquímica del Neuquén, S.A. years before the Security Agreement was executed annexed herein as **Exhibit A** is a report obtained by H&H's counsel in Argentina dated April 3, 2023 from records maintained by the SEMH (Provincial Mining Directorate, Undersecretariat of Energy, Mining and Hydrocarbons), the Argentine provincial government agency responsible for mining regulation and oversight;

WHEREAS, this pattern of deceit extends to attempts by Bernadet to sell and transfer mining concessions subject to the Security Agreement through Electroquímica del Neuquén, S.A. to other entities, including Unicoin, Inc., acting in bad faith and with fraudulent intent;

WHEREAS, AMA failed to fulfill its financial obligation to H&H with the first installment payment due on January 1, 2021, under the Loan Agreement and Note;

4

WHEREAS, following this missed payment, H&H issued a Notice of Default to Bernadet on January 27, 2021, and a Notice of Acceleration on February 4, 2021, demanding repayment of the Loan in full, amounting to $861,934.83, alongside accruing interest at a default rate of 15% from January 1, 2021;

WHEREAS, despite the notices, no payment was received from Bernadet;

WHEREAS, H&H has already obtained a money judgment against Bernadet in the Southern District of New York, Case No. 21-cv-1323, wherein on February 2, 2022, a default judgment was entered in H&H's favor against Bernadet for the principal amount due under his personal guarantee, plus accrued interest and legal costs, totaling $1,057,826.03, which judgment affirmed the financial liability of Bernadet for the defaulted loan and associated enforcement expenses;

WHEREAS, H&H initially included Electroquímica del Neuquén, S.A. as a defendant in this action but subsequently withdrew its claims against Electroquímica del Neuquén, S.A. due to difficulties with service of process under the Hague Convention;

NOW THEREFORE, it is

ORDERED, ADJUDGED AND DECREED: that the transfers by defendant Ernesto Bernadet to Electroquímica del Neuquén, S.A. of the following mining concessions: Revancha (expediente 070-159-2008; Quillen Diez, B (expediente 8051/1993),  La Cuprosa (expediente 4.281 – 1967), La Barrosa (expediente 4.854 – 1969), La Nuestra (expediente 5742/1969), were made with fraudulent intent to hinder, delay, and defraud H&H as a creditor, and said transfers are hereby declared fraudulent and void as against H&H.

IT IS FURTHER ORDERED that with respect to the Diverted Collateral, defendant Bernadet and all those acting in concert with him, his agents, servants, employees, attorneys, and

5

all persons acting in participation with him, directly or indirectly, shall cause Electroquímica del Neuquén, S.A. to provide and grant a first priority security interest and lien to H&H in such Diverted Collateral.

IT IS FURTHER ORDERED that with respect to any part of the Collateral that was subsequently transferred by Electroquímica del Neuquén, S.A. to third parties, including but not limited to Unicoin, Inc., H&H shall have all rights as a secured party to seek enforcement of its security interest against such transferees under applicable law.

IT IS FURTHER ORDERED that defendant Ernesto Bernadet and all persons acting in concert or participation with Bernadet, including but not limited to Bernadet's agents, servants, employees, attorneys, successors, and assigns, and all other persons having actual notice of this Order, are hereby PERMANENTLY ENJOINED AND RESTRAINED from: (a) transferring, conveying, encumbering, pledging, hypothecating, assigning, selling, disposing of, or otherwise alienating, directly or indirectly, any right, title, or interest in Revancha (expediente 070-159-2008), La Cuprosa (expediente 4.281-1967), La Barrosa (expediente 4.854-1969), Gabriela Victoria (expediente 069-159-2008), Fauspe Sur (expediente 1136/1994), La Nuestra (expediente 5742/1969), Quillen Diez B (expediente 8051/1993), and El Deslinde (expediente 453-141-2006); (b) taking any action that would diminish, impair, or interfere with H&H's rights, title, or interest in the aforementioned property; (c) executing, delivering, or recording any document purporting to transfer or encumber any interest in said property; and (d) engaging in any conduct that would frustrate the purposes of this permanent injunction. This injunction shall remain in full force and effect until further order of this Court.

IT IS FURTHER ORDERED that defendant Ernesto Bernadet shall execute all documents necessary to perfect Plaintiff's security interest in the aforementioned mining concessions, including but not limited to the document annexed herein as **Exhibit B**.

IT IS FURTHER ORDERED AND ADJUDGED that pursuant to the terms of the Loan Documents, including but not limited to Section 12 of the Security Agreement, Plaintiff is entitled to recover all reasonable costs and expenses incurred in connection with this action, including reasonable attorneys' fees and costs. ~~Plaintiff shall file and serve an affidavit detailing such fees and costs within thirty (30) days of the entry of this judgment, and upon review by the Court, such amounts shall be added to this judgment and bear interest at the same rate as the principal judgment amount from the date of entry of this judgment.~~ in an amount to be determined by Magistrate Judge Gorenstein in a post-default damages inquest.

Dated: New York, New York
February 17, 2026 , ~~2025~~

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

New York law applies because no party has argued otherwise and because the agreements that have been filed do not contain a contrary choice of law provision. *See Wansdown Props. Corp., N.V. v. Azari*, 86 N.Y.S.3d 469, 471 (1st Dep't 2018).

With respect to the first and fifth claims to relief in the Complaint for breach of contract against Bernadet, Plaintiff has demonstrated that injunctive relief is justified to remedy Defendant Bernadet's breaches of the Security Agreement, as set forth above. The Complaint adequately alleges that Defendant Bernadet breached the Security Agreement, that Plaintiff performed its obligations under the Security Agreement, and that there is no adequate remedy at law for Defendant's breach. *See 301 E. 60th St. LLC v. Competitive Sols. LLC*, 190 N.Y.S.3d 327, 333 (1st Dep't 2023).

With respect to the eighth claim to relief in the Complaint for fraudulent conveyance, Plaintiff has demonstrated entitlement to declaratory relief against Bernadet. The Complaint adequately alleges that Bernadet transferred assets with actual intent to hinder, delay, or defraud Plaintiff. *See* N.Y. Debt. & Cred. L. § 273(a)(1); *Arel Cap. Partners II LLC v. JP Morgan Chase Bank, N.A.*, 219 N.Y.S.3d 663, 663 (1st Dep't 2024); *Barkhouse v. Dean*, No. 24 Civ. 7491, 2025 WL 2773069, at *13 (S.D.N.Y. Sept. 26, 2025). Plaintiff is entitled to a declaratory judgment that the challenged transfers of collateral are null and void as to Plaintiff. Plaintiff has not shown that it is entitled to declaratory relief as to third parties separate and apart from the benefits accruing to Plaintiff from Bernadet's transfers being declared null and void as to Plaintiff, because neither the Complaint nor Plaintiff's papers in support of judgment develops a legal theory justifying such relief.

Although Defendant Bernadet failed to appear at the show cause hearing on February 10, 2026, Bernadet, acting pro se, filed a written submission. Bernadet's arguments as to lack of service are unavailing because Plaintiff filed proof of service of the Complaint and secured a certificate of default. Bernadet's arguments as to lack of personal jurisdiction are unavailing because the Security Agreement, which Bernadet signed, states that the Southern District of New York will have personal jurisdiction over any disputes arising under the Agreement. Bernadet's merits arguments are waived by virtue of Bernadet's default.

7

# Exhibit A



**Provincia del Neuquén**
1983/2023 - 40 AÑOS DE DEMOCRACIA

**Número:** IF-2023-00720439-NEU-MINERIA#SEMH

ZAPALA, NEUQUEN
Lunes 3 de Abril de 2023

**Referencia:** RESPUESTA SOLICTUD DE INFORE

Visto lo requerido por el Dr. Matias Cenci, con su presentación de fecha 03/04/2023, esta Dirección General Legal Informa:

1) **EXPEDIENTE:** 1135/1994 - EX-2022-01239033- -NEU-MINERIA#SEMH - S/ MANIFESTACION DESCUBRIMIENTO DE COBRE DISEMINADO - MINA: " YARABI NORTE"

**TITULAR:** ELECTROQUIMICA DEL NEUQUEN S.A

**ESTADO LEGAL:** ACTIVO

**OBSERVACIONES:** Electroquímica del Neuquén S.A. adquiere la titularidad de la mina por cesión de derechos de fecha 26/04/2013. –

2) **EXPEDIENTE:** 1137/1994 - S/ MANIFESTACION DESCUBRIMIENTO DE COBRE DISEMINADO - MINA: " BARDA I"

**TITULAR:** ALLIED MINES OF ARGENTINA INC

**ESTADO LEGAL:** VACANTE (Resolución Nº 23/2017)

**OBSERVACIONES**: En Dirección General Técnica por inspección art. 38 Ley 902/75. –

3) **EXPEDIENTE:** 3451-000453/2006 - S/ SOLICITUD DE MINA VACANTE (EXPTE. 5739/1969 s/ MANIFESTACIÓN DE DESCUBRIMIENTO COBRE – MINA:" El Deslinde"

**TITULAR:** ERNESTO BERNADET CORBO

**ESTADO LEGAL:** ACTIVO

**OBSERVACIONES**: A la fecha no ha obtenido titularidad de mina. –

4) **EXPEDIENTE:** 1136/1994 – EX – 2021-01005070- -NEU-MINERIA#SEMH  S/ SOLICITUD DE MANIFESTACION DE DESCUBRIMIENTO DE COBRE DISEMINADO –MINA: "Faupe Sur"

**TITULAR:** ERNESTO BERNADET CORBO

**ESTADO LEGAL:** ACTIVO

5) **EXPEDIENTE:** 1404/1995-    S/ MANIFESTACIÓN DE DESCUBRIMIENTO DE COBRE DISEMINADO – MINA: "La Justa"

**TITULAR:** ALLIED MINES OF ARGENTINA INC.

**ESTADO LEGAL:** ACTIVO

**OBSERVACIONES**: ALLIED MINES OF ARGENTINA INC. adquiere la titularidad de la mina por cesión de derechos de fecha 02/07/2007. –

6) **EXPEDIENTE:** 4281/1967-  EX-2021-00949822- -NEU-MINERIA#SEMH - S/ MANIFESTACION DESCUBRIMIENTO DE COBRE DISEMINADO - MINA: " LA CUPROSA"

**TITULAR:** ELECTROQUIMICA DEL NEUQUEN S.A

**ESTADO LEGAL:** ACTIVO

**OBSERVACIONES:** Electroquímica del Neuquén S.A. adquiere la titularidad de la mina por cesión de derechos de fecha 26/04/2013. –

7) **EXPEDIENTE:** 1134/1994 -  EX-2023-00442912- -NEU-MINERIA#SEMH - S/ MANIFESTACION DESCUBRIMIENTO DE COBRE DISEMINADO - MINA: " LAS BARDAS"

**TITULAR:** ELECTROQUIMICA DEL NEUQUEN S.A

**ESTADO LEGAL:** ACTIVO

**OBSERVACIONES:** Electroquímica del Neuquén S.A. adquiere la titularidad de la mina por cesión de derechos de fecha 26/04/2013. –

8) **EXPEDIENTE:** 5742/1969 -  EX-2022-1808162- -NEU-MINERIA#SEMH - S/ MANIFESTACION DESCUBRIMIENTO DE COBRE - MINA: " LA MUESTRA"

**TITULAR:** ELECTROQUIMICA DEL NEUQUEN S.A

**ESTADO LEGAL:** ACTIVO

**OBSERVACIONES:** Electroquímica del Neuquén S.A. adquiere la titularidad de la mina por cesión de derechos de fecha 26/04/2013. –

9) **EXPEDIENTE:** 4854/1969 -  EX-2022-01758956- -NEU-MINERIA#SEMH - S/ MANIFESTACION DESCUBRIMIENTO DE COBRE - MINA: " LA BARROSA"

**TITULAR:** ELECTROQUIMICA DEL NEUQUEN S.A

**ESTADO LEGAL:** ACTIVO

**OBSERVACIONES:** Electroquímica del Neuquén S.A. adquiere la titularidad de la mina por cesión de derechos de fecha 26/04/2013. –

Elias Moises Salazar
Director General
SEMH - Dirección Provincial de Minería
Subsecretaría de Energía, Minería, e Hidrocarburos

## TRANSLATOR'S CERTIFICATION

I, James Holme, hereby certify that:

I am fluent in both Spanish and English languages.

I have translated the attached document from Spanish into English to the best of my ability and knowledge.

The translation is true, accurate, and complete to the best of my knowledge and belief.

I am competent to translate the document based on my knowledge of both languages.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 29, 2025 at New York, New York.

James Holme
126 East 56th St. 10th Floor,
New York NY 10022
holme@hhmetals.com



Province of Neuquen
1983/2023  40 years od Democracy

Number IF – 2023 – 00720439-NEU-Mineria#SEMH          Zapala , NEUQUEN
                                                      Monday 3 April 2023

Reference : Reply request of information

Further to the request by Dr Matias Cenci with his presentation dated 03/04/2023 this General Legal Office informs ;

1) Report : 1135/1994 – Ex-2022-01239033-MEU-Mineria#SEMH – S/Manifestation Discovery of Diseminated Copper – Mine : Yarabi North
Titled : ELECTROQUIMICA DEL NEUQUEN
Legal Status : Active
Observations : Electroquimica del Neuquen S.A. acquieres the title of the mine by assignment of rights dated 26/04/2013

2) Report : 1137/1994 – S /Manifestation Discovery of Diceminated Copper – Mine ; BARDA 1
Titled ; Allied Mines of Argentina Inc
Legal Status ; Vacant ( Resolution Nbr 23/2017)
Observations; at the General Technical Office by inspection article 38 law 902/75

3) Report : 3451-000453/2006 – S/ Request of Vacant Mine ( Report 5739/1969 s/ Manifestation of Copper Discovery – Mine _ "El Deslinde"
Titled : Ernesto Bernadet Corbo
Legal Status : Active
Observations : to date has not obtained Title to the mine  -

4) Report: 1136/1994 – EX – 2021-01005070 – NEU-Mineria#SEMH S/ Request of Manifestation of Discovery of Diceminated Copper -Mine : "Faupe Sur"
Titled : Ernesto Bernadet Corbo
Legal Status ; Active

5) Report 1404/1995-  S/ Manifestation of Discovery od Diceminated Copper – Mine: " La Justa "
Titled : Allied Mines of Argentina Inc.

Legal Status : Active
Observations : Allied Mines of Argentina Inc. acquires title of the mine by assignment of rights dated 02/07/2007

6) Report 4281/1967- EX-2021-00949822- - NEU-MINERIA#SEMH – S/ Manifestation Discovery of diceminated  Copper – Mine: "La CUPROSA"
Titled: ELECTROQUEMICA del NEUQUEN S.A.
Legal Status ; Active
Observations; Electroquimica del Neuquen S.A. acquires title of the mine by assignment of rights dated 26/04/2013

7) Report : 1134/1994 – EX-2023-00442912- -NEU-MINERIA#SEMH – S/ Manifestation Discovery of Diceminated Copper – Mine : " Las Bardas"
Titled ; Electroquimica del Neuquen S.A.
Legal Status ; Active
Observation: Electroquimica del Neuquen S.A. acquires title of the mine by assigment of rights dated 26/04/2013

8) Report 5742/1969 – EX-2022-1808162- -NEU-MINERIA#SEMH – S/Manifestation Discovery of Diceminated Copper – Mine : " LA MUESTRA"
Titled ; Electroquimica del Neuquen S.A.
Legal Status : Active
Observations : Electroquimica del Neuquen S.A. acquires title of the mine by assignment of rights dated 26/04/2013

9) Report 4854/1969 – EX-2022-01758956- -NEU-MINERIA#SEMH – S/ Manifestation  Discovery of Diceminated Copper – Mine: "La BARROSA"
Titled ; Electroquimica del Neuquen S.A.
Legal Status : Active
Observations : Electroquimica del Neuquen S.A. acquires title of the mine by assignment of rights dated 26/04/2013

Elias Moises Salazar
Director General
SEMH – Provincial Mining Office
Subsecretary of Energy . Mining and Hydrocarbons b



2

# Exhibit B

**CESION DE DERECHOS DE RETENCION SOBRE PROPIEDADES MINERAS**

**ENTRADA:**

**POR LA PRIMERA PARTE:**

**ERNESTO BERNADET CORBO** , con domicilio en 92 SW 3rd Street, N.º 511, Miami, Florida 33130. Con domicilio procesal declarado en Argentina calle Av. San Martin N° 981 de la ciudad de Zapala, provincia del Neuquén.

Y:

**POR OTRA PARTE:**

**El Sr. JAMES WILLIAM HOLME CHAVEZ, de nacionalidad peruana, con NIF 06379452,** en su calidad de Administrador Único con facultades generales para litigios y cobranzas, actos de administración y control de la persona jurídica, empresa, **H&H METALS CORP** ., sociedad neoyorquina con domicilio en 126 East 56th St., 10th Floor, New York New York 10022. ( en adelante, " **El Cesionario"** )

## I.-CONSIDERANDO QUE:

A) Que las concesiones mineras fueran de propiedad del señor Ernesto Bernadet Corvo y son además las titulares exclusivas de la concesión minera, inscrita bajo los títulos de propiedad que obran en los registros de la Dirección Provincial de Minería de Primera Instancia de la provincia del Neuquén, conforme se detalla en el punto C).

B) Que los contratos de concesión fueron otorgados por la Dirección Provincial de Minería de Primera Instancia de la provincia del Neuquén.

C) Que los contratos de Concesión Minera se inscriben bajo los siguientes números de expediente:

• EXPEDIENTE CON NÚMERO DE REGISTRO 070-159- 2008 - MINA "REVANCHA" .

• EXPEDIENTE CON NÚMERO DE REGISTRO 4.281 – 1967 – MINA LA CUPROSA .

• EXPEDIENTE CON NÚMERO DE REGISTRO 4.854 – 1969 – MINA "LA BARROSA".

• EXPEDIENTE CON NÚMERO DE REGISTRO 069-159–2008 MÍO – " GABRIELA VICTORIA"
• EXPEDIENTE CON NÚMERO DE REGISTRO 1136/1994 MÍA – "FAUSPE SUR.

• EXPEDIENTE CON NÚMERO DE REGISTRO    5742/1969 – MÍA – "LA NUESTRA".

• EXPEDIENTE CON NÚMERO DE REGISTRO 8051/1993- MÍA – "QUILLEN DIEZ B"

• EXPEDIENTE: 1135/1994 - EX-2022-01239033- -NUEVO- MINERÍA#SEMH   -   S/   DECLARACIÓN   DE DESCUBRIMIENTO DE COBRE DISPERSADO - MINA: "YARABI NORTE"

• EXPEDIENTE: 3451-000453/2006 - S/ SOLICITUD DE MINA VACANTE (EXPEDIENTE 5739/1969 s/ DECLARACIÓN DE DESCUBRIMIENTO DE COBRE – MINA: "El Deslinde"

• EXPEDIENTE: 1134/1994 - EX-2023-00442912- -NUEVO- MINERÍA#SEMH   -   S/   DECLARACIÓN   DE DESCUBRIMIENTO DE COBRE DISPERSADO - MINA: "LAS BARDAS"

**D)** Que **EL CESIONARIO** a los efectos de ejecutar el gravamen que recae en las propiedades mineras antes mencionadas   pretende obtener todos los derechos de conservación y retención    y asumir todas las obligaciones de **EL CEDENTE** contenidas en el Contrato de Concesión Minera en un porcentaje equivalente al CIEN POR CIENTO (100%) de los títulos y según lo detallado en el apartado anterior,

**E)** Eso **EL CEDENTE** desea otorgar su consentimiento pleno e incondicional para que **EL CESIONARIO** adquiera todos los derechos antes mencionados y asuma las obligaciones de **EL CEDENTE** en CIEN POR CIENTO (100%) contenidas en los expedientes de Concesión Minera, de conformidad con los términos y condiciones pactados en este

contrato.

F) La Concesión Minera ha sido válidamente ubicada y se encuentra debidamente descrita en la definición de "Concesión Minera" e identificada con sus coordenadas correspondientes.

**POR TANTO** , en virtud de las declaraciones y garantías mutuamente declaradas por las partes en este contrato, acuerdan lo siguiente:

**CLÁUSULAS:**

**PRIMERO: DEFINICIONES.**

**1.1. Actividades Mineras:** significa todos los derechos de exploración otorgados por la Ley de Minería y su Reglamento a los titulares de la Concesión Minera, incluyendo, sin limitación, todo trabajo o labor realizada en la Concesión Minera con el propósito de:
   a) Identificar depósitos minerales y cuantificar las reservas minerales para determinar la viabilidad económica de su recuperación; y
   b) Preparar y desarrollar el área que comprende el yacimiento mineral para recuperar y extraer productos minerales.

**1.2  CESIÓN** : significa la cesión a EL CESIONARIO del CIEN POR CIENTO (100%) de todos los derechos de garantía y retención otorgados a EL CEDENTE y las obligaciones asumidas por éste, en los expedientes de CONCESIÓN MINERA de conformidad con lo establecido en el punto IC)

**1.3 :  CONCESIÓN MINERA** significa la concesión minera para Exploración y Explotación identificada en los expedientes señalados en el punto C), que ampara los derechos de exploración y explotación sobre el área de cada una de las propiedades mineras a que se refiere.

 **1.4 GRAVAMEN:** "Gravamen" significa cualquier hipoteca, escritura de garantía, escritura de fideicomiso, prenda, hipoteca, cesión, garantía mobiliaria, gravamen (ya sea estatutario o de otro tipo), cargo, reclamo o gravamen, preferencia, prelación u otro acuerdo de garantía o acuerdo preferencial que se tenga o afirmado con respecto a cualquier activo de  cualquier tipo o naturaleza, incluida cualquier venta condicional u otro acuerdo de retención de título, cualquier contrato de arrendamiento que tenga sustancialmente el mismo efecto económico que cualquiera de los anteriores, y la presentación o el acuerdo de otorgar cualquier declaración de financiamiento bajo la UCC o una ley comparable de cualquier jurisdicción**.**

 **SEGUNDO: OBJETO**

Para asegurar el pronto cumplimiento de las obligaciones pendientes al Cesionario, el Cedente, asigna, pignora y otorga al Prestamista una garantía real continua, y un gravamen, ejecutable bajo la presente cesión y conforme las cláusulas aquí expuestas.

**En tal sentido, EL CEDENTE** cede a **EL CESIONARIO** el cien por ciento (100%) de los derechos de retención  y obligaciones derivados de su calidad de **CONCESIONARIO** de los contratos de CONCESIÓN MINERA: detallados en el punto I. C), cuya cesión alcanza a todos los derechos y  obligaciones, costos, gastos y demás derechos que le correspondan bajo el referido contrato en relación con el porcentaje que se cede,

renunciando en este acto a cualquier reclamación por tales conceptos contra **EL CEDENTE – CONCESIONARIO.**

**TERCERA.- DECLARACIÓN ESPECIAL Y OBLIGACIONES DE LOS CESIONARIOS**

**El Cesionario** declara que conoce y acepta los términos, condiciones, normas legales, derechos, obligaciones y condiciones de los Contratos de CONCESIÓN MINERA, de los cuales se deriva la posición contractual y los derechos y obligaciones que por este medio se ceden; y que, en consecuencia, se obliga a cumplir con todas las obligaciones derivadas de dicho contrato, con sujeción a sus normas y obligaciones.

El Cesionario es una compañía debidamente organizada y válidamente existente bajo las leyes del Estado de Nueva York, Estados Unidos de América, y tiene plena autoridad y poder para asumir las obligaciones requeridas bajo este contrato de cesión, y su cumplimiento no causará ningún conflicto ni violará los términos y obligaciones aquí estipulados.

Que uno de los objetos sociales principales de la Cesionaria es la explotación de yacimientos de toda clase de minerales

Que el Cesionario no tiene conocimiento de ningún requisito legal que pudiera afectar adversa o significativamente su capacidad para celebrar este contrato de cesión.

<u>**CUARTA – RESPONSABILIDAD DEL CEDENTE :**</u>

**EL CEDENTE** responderá ante el cesionario de la existencia y validez del contrato del que deriva la cesión del 100% de los derechos y obligaciones.

<u>**QUINTO:**</u> Que todas las propiedades mineras detalladas en el punto C) son elegibles para la transferencia minera de conformidad con las disposiciones específicas vigentes y que el cumplimiento de este contrato no causará conflicto ni violará los términos y obligaciones de ningún contrato del cual sea signatario o esté obligado a cumplir, ni será contrario ni violará ninguna resolución, decreto, orden, estatuto, norma o reglamento que le sea aplicable.

<u>**SEXTA: EFECTOS DE LA CESIÓN**</u>

El presente Contrato de Cesión surtirá efectos entre **el Cedente y el Cesionario** a partir de la fecha de su firma y, respecto de la Dirección Provincial de Minería de la provincia de Neuquén, a partir de la fecha de su presentación ante la Escribanía de Minería de dicha Dirección, una vez expedido el acto administrativo que autoriza la transferencia por la Dirección de Minería. El Cesionario acepta y adquiere la transferencia y asume todos los derechos y obligaciones del Cedente convenidos en las condiciones vigentes a la fecha de la firma del presente contrato.

**Párrafo.** Se establece expresamente que el presente Contrato de Cesión deberá presentarse con los títulos de propiedad minera detallados en el punto C) al día con todos los impuestos, pólizas, multas y regalías.

## SÉPTIMO: DECLARACIONES, GARANTÍAS Y ACUERDOS ADICIONALES .

El deudor declara, garantiza y acepta lo siguiente:

**(a)** El presente Contrato de Cesión y los Documentos de Préstamo celebrados y entregados por EL CEDENTE constituyen obligaciones legales, válidas y vinculantes de EL CEDENTE, exigibles de conformidad con sus términos.

**(b)** Los Anexos A) y B) son dos certificados de propiedad emitidos por la Dirección Provincial de Minería y establecen el nombre legal y la descripción oficial de cada concesión minera sobre la cual EL CEDENTE tiene derechos en Argentina, tanto en nombre propio como por cuenta de AMA RESOURCES INC.

**(c)** No existen litigios , acciones o procedimientos pendientes o amenazados que pudieran tener un efecto material adverso.

## OCTAVO . Poder notarial :

**El CEDENTE** por la presente **designa al CESIONARIO o a cualquier otra persona que este designe como apoderado del CEDENTE** , con poder notarial, para realizar todos los actos necesarios para llevar a cabo esta Cesión, cualquier Documento de Préstamo y todos los documentos relacionados. El cedente ratifica y aprueba todos los actos del apoderado. Ni el cesionario ni el apoderado serán responsables de ningún acto u omisión, ni de ningún error de juicio, de hecho o de derecho. Este poder notarial, junto con un derecho de representación, es irrevocable mientras se lleven a cabo las cesiones de todas las propiedades mineras involucradas en este acuerdo .
Asimismo, EL CEDENTE otorga al CESIONARIO un poder irrevocable para iniciar y llevar adelante, en su nombre y representación, hasta su completa extinción, todos los procedimientos judiciales y administrativos que se le encomiende iniciar y/o intervenir, tanto ante los tribunales de la provincia del Neuquén como ante los tribunales federales y/o administrativos de la autoridad minera provincial del Neuquén, y a tal efecto, autoriza al representante designado por el CESIONARIO para que proceda a la inscripción, presentación y/o notificación y constancia de la presentación del presente contrato de cesión de derechos mineros en todos y cada uno de los expedientes detallados en el apartado I, inciso C).

## NOVENA: LEY APLICABLE Y TRIBUNALES :

El presente contrato se interpretará y regirá por las disposiciones del Código de Minería de la provincia del Neuquén y sus decretos reglamentarios, el Código Civil y Comercial de la República Argentina y las leyes complementarias. En caso de interpretación, cumplimiento o ejecución del presente contrato, o de interpretación de cualquier aspecto no expresamente estipulado en el mismo, las partes se someten a la jurisdicción de los tribunales de Zapala, provincia del Neuquén.

Esta Cesión constituye un acuerdo completo y total respecto de su objeto.

PARA EFECTOS DE REGISTRO, ESTE DOCUMENTO ESTÁ FIRME POR LAS PARTES
EN DOS EJEMPLARES DEL MISMO TENOR EN......................................................, EL
…………………………………………………

PARA EL CEDENTE:                         PARA EL CESIONARIO

## TRANSLATOR'S CERTIFICATION

I, James Holme, hereby certify that:

I am fluent in both Spanish and English languages.

I have translated the attached document from Spanish into English to the best of my ability and knowledge.

The translation is true, accurate, and complete to the best of my knowledge and belief.

I am competent to translate the document based on my knowledge of both languages.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 29, 2025 at New York, New York.

James Holme
126 East 56th St.. 10th Floor,
New York N 10022
holme@hhmetals.com

**ASSIGNMENT OF RETENTION RIGHTS OVER MINING PROPERTIES**

ENTRY:

FOR THE FIRST PARTY:

ERNESTO BERNADET CORBO, domiciled at 92 SW 3rd Street, No. 511, Miami, Florida 33130. With procedural domicile declared in Argentina at Av. San Martin No. 981 in the city of Zapala, province of Neuquén.

AND:

FOR THE OTHER PARTY:

Mr. JAMES WILLIAM HOLME CHAVEZ, of Peruvian nationality, with NIF 06379452, in his capacity as Sole Administrator with general powers for litigation and collections, acts of administration and control of the legal entity, company, H&H METALS CORP., a New York corporation domiciled at 126 East 56th St., 10th Floor, New York New York 10022. (hereinafter, "The Assignee")

I.-CONSIDERING THAT:

A) That the mining concessions were the property of Mr. Ernesto Bernadet Corvo and are also the exclusive holders of the mining concession, registered under the property titles that appear in the records of the Provincial Mining Directorate of First Instance of the province of Neuquén, as detailed in point C).

B) That the concession contracts were granted by the Provincial Mining Directorate of First Instance of the province of Neuquén.

C) That the Mining Concession contracts are registered under the following file numbers:

• FILE WITH REGISTRATION NUMBER 070-159-2008 - MINE "REVANCHA".

• FILE WITH REGISTRATION NUMBER 4.281 – 1967 – MINE LA CUPROSA.

• FILE WITH REGISTRATION NUMBER 4.854 – 1969 – MINE "LA BARROSA".

• FILE WITH REGISTRATION NUMBER 069-159–2008 MINE – "GABRIELA VICTORIA"

• FILE WITH REGISTRATION NUMBER 1136/1994 MINE – "FAUSPE SUR.

• FILE WITH REGISTRATION NUMBER 5742/1969 – MINE – "LA NUESTRA".

• FILE WITH REGISTRATION NUMBER 8051/1993- MINE – "QUILLEN DIEZ B"

• FILE: 1135/1994 - EX-2022-01239033- -NEW- MINING#SEMH - RE/ DECLARATION OF DISCOVERY OF DISPERSED COPPER - MINE: "YARABI NORTE"

• FILE: 3451-000453/2006 - RE/ APPLICATION FOR VACANT MINE (FILE 5739/1969 re/ DECLARATION OF DISCOVERY OF COPPER – MINE: "El Deslinde"

• FILE: 1134/1994 - EX-2023-00442912- -NEW- MINING#SEMH - RE/ DECLARATION OF DISCOVERY OF DISPERSED COPPER - MINE: "LAS BARDAS"

D) That THE ASSIGNEE, for the purposes of executing the encumbrance that falls on the aforementioned mining properties, intends to obtain all the conservation and retention rights and assume all the obligations of THE ASSIGNOR contained in the Mining Concession Contract in a percentage equivalent to ONE HUNDRED PERCENT (100%) of the titles and as detailed in the preceding section,

E) That THE ASSIGNOR wishes to grant full and unconditional consent for THE ASSIGNEE to acquire all the aforementioned rights and assume the obligations of THE ASSIGNOR in ONE HUNDRED PERCENT (100%) contained in the Mining Concession files, in accordance with the terms and conditions agreed upon in this contract.

F) The Mining Concession has been validly located and is duly described in the definition of "Mining Concession" and identified with its corresponding coordinates.

THEREFORE, by virtue of the declarations and guarantees mutually declared by the parties in this contract, they agree to the following:

CLAUSES:

FIRST: DEFINITIONS.

1.1. Mining Activities: means all exploration rights granted by the Mining Law and its Regulations to the holders of the Mining Concession, including, without limitation, all work or labor performed in the Mining Concession with the purpose of:

a) Identifying mineral deposits and quantifying mineral reserves to determine the economic viability of their recovery; and

b) Preparing and developing the area comprising the mineral deposit to recover and extract mineral products.

1.2 ASSIGNMENT: means the assignment to THE ASSIGNEE of ONE HUNDRED PERCENT (100%) of all security and retention rights granted to THE ASSIGNOR and the obligations assumed by the latter, in the MINING CONCESSION files in accordance with what is established in point IC)

1.3 MINING CONCESSION: means the mining concession for Exploration and Exploitation identified in the files indicated in point C), which covers the exploration and exploitation rights over the area of each of the mining properties to which it refers.

1.4 ENCUMBRANCE: "Encumbrance" means any mortgage, security deed, trust deed, pledge, hypothecation, assignment, security interest, lien (whether statutory or otherwise), charge, claim or encumbrance, preference, priority or other security agreement or preferential arrangement held or asserted with respect to any asset of any kind or nature, including any conditional sale or other title retention agreement, any lease agreement having substantially the same economic effect as any of the foregoing, and the filing or agreement to grant any financing statement under the UCC or comparable law of any jurisdiction.

SECOND: PURPOSE

To ensure prompt fulfillment of the pending obligations to the Assignee, the Assignor assigns, pledges and grants to the Lender a continuing security interest, and an encumbrance, enforceable under this assignment and according to the clauses set forth herein.

In that regard, THE ASSIGNOR assigns to THE ASSIGNEE one hundred percent (100%) of the retention rights and obligations derived from its status as CONCESSIONAIRE of the MINING CONCESSION contracts: detailed in point I. C), whose assignment extends to all rights and obligations, costs, expenses and other rights corresponding to it under said contract in relation to the percentage being assigned, renouncing in this act any claim for such concepts against THE ASSIGNOR – CONCESSIONAIRE.

THIRD.- SPECIAL DECLARATION AND OBLIGATIONS OF THE ASSIGNEES

The Assignee declares that it knows and accepts the terms, conditions, legal norms, rights, obligations and conditions of the MINING CONCESSION Contracts, from which the contractual position and the rights and obligations that are hereby assigned are derived; and that, consequently, it is obligated to comply with all obligations derived from said contract, subject to its norms and obligations.

The Assignee is a company duly organized and validly existing under the laws of the State of New York, United States of America, and has full authority and power to assume the obligations required under this assignment contract, and its fulfillment will not cause any conflict nor violate the terms and obligations stipulated herein.

That one of the main corporate purposes of the Assignee is the exploitation of deposits of all kinds of minerals.

That the Assignee has no knowledge of any legal requirement that could adversely or significantly affect its ability to enter into this assignment contract.

FOURTH – RESPONSIBILITY OF THE ASSIGNOR:

THE ASSIGNOR shall be responsible to the assignee for the existence and validity of the contract from which the assignment of 100% of the rights and obligations is derived.

FIFTH: That all the mining properties detailed in point C) are eligible for mining transfer in accordance with the specific provisions in force and that the fulfillment of this contract will not cause conflict nor violate the terms and obligations of any contract of which it is a signatory or is obligated to comply with, nor will it be contrary to nor violate any resolution, decree, order, statute, rule or regulation applicable to it.

SIXTH: EFFECTS OF THE ASSIGNMENT

This Assignment Contract shall take effect between the Assignor and the Assignee as of the date of its signature and, with respect to the Provincial Mining Directorate of the province of Neuquén, as of the date of its presentation before the Mining Notary of said Directorate, once the administrative act authorizing the transfer by the Mining Directorate is issued. The Assignee accepts and acquires the transfer and assumes all rights and obligations of the Assignor agreed upon in the conditions in force as of the date of signature of this contract.

Paragraph. It is expressly established that this Assignment Contract must be presented with the mining property titles detailed in point C) current with all taxes, policies, fines and royalties.

SEVENTH: DECLARATIONS, WARRANTIES AND ADDITIONAL AGREEMENTS.

The debtor declares, warrants and accepts the following:

(a) This Assignment Contract and the Loan Documents entered into and delivered by THE ASSIGNOR constitute legal, valid and binding obligations of THE ASSIGNOR, enforceable in accordance with their terms.

(b) Annexes A) and B) are two certificates of ownership issued by the Provincial Mining Directorate and establish the legal name and official description of each mining concession over which THE ASSIGNOR has rights in Argentina, both in its own name and on behalf of AMA RESOURCES INC.

(c) There are no pending or threatened litigation, actions or proceedings that could have a material adverse effect.

EIGHTH. Power of attorney:

THE ASSIGNOR hereby designates THE ASSIGNEE or any other person it may designate as attorney-in-fact for THE ASSIGNOR, with power of attorney, to perform all acts necessary to carry out this Assignment, any Loan Document and all related documents. The assignor ratifies and approves all acts of the attorney-in-fact. Neither the assignee nor the attorney-in-fact shall be liable for any act or omission, nor for any error of judgment, fact or law. This power of attorney, together with a right of representation, is irrevocable while the assignments of all mining properties involved in this agreement are being carried out.

Likewise, THE ASSIGNOR grants to THE ASSIGNEE an irrevocable power of attorney to initiate and carry forward, in its name and representation, until their complete extinction, all judicial and administrative proceedings that it is entrusted to initiate and/or intervene in, both before the courts of the province of Neuquén and before the federal and/or administrative courts of the provincial mining authority of Neuquén, and to that effect, authorizes the representative designated by THE ASSIGNEE to proceed with the registration, filing and/or notification and record of the filing of this mining rights assignment contract in each and every one of the files detailed in section I, subsection C).

NINTH: APPLICABLE LAW AND COURTS:

This contract shall be interpreted and governed by the provisions of the Mining Code of the province of Neuquén and its regulatory decrees, the Civil and Commercial Code of the Argentine Republic and complementary laws. In case of interpretation, fulfillment or execution of this contract, or interpretation of any aspect not expressly stipulated therein, the parties submit to the jurisdiction of the courts of Zapala, province of Neuquén.

This Assignment constitutes a complete and total agreement with respect to its purpose.

FOR REGISTRATION PURPOSES, THIS DOCUMENT IS SIGNED BY THE PARTIES IN TWO COPIES OF THE SAME TENOR IN
……………………………………………………, ON
……………………………………………………

FOR THE ASSIGNOR: FOR THE ASSIGNEE